UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30(4/19)

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** The Court GRANTS the motion for preliminary approval

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiff Michelle Nourian Martinez ("Plaintiff"). *See generally* Dkt. # 30 ("*Mot.*"). Defendant Helzberg's Diamond Shops, Inc. ("Defendant") does not oppose the motion. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion.

I.   Background

Defendant is a nationwide retail jewelry store chain. *Complaint*, Dkt. # 1 ¶ 12. On May 27, 2020 Plaintiff initiated this putative class action on behalf of herself and other similarly situated Retail Store Managers at Defendant's business. *See generally id.* Plaintiff alleges that Defendant misclassified its Retail Store Managers as "exempt employees," and that this misclassification led to violations of the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and the California Unfair Business Practices Act ("UCL"). *See generally id.* Plaintiff filed the operative First Amended Complaint on August 7, alleging the following causes of action: (1) failure to pay minimum, straight time, and overtime wages; (2) meal and rest period violations; (3) inaccurate wage statements; (4) waiting time penalties; (5) unfair business practices; and (6) Private Attorney General Act ("PAGA") Penalties. *See generally First Amended Complaint*, Dkt. # 20 ("*FAC*").

The parties then began formal discovery, but shortly thereafter they agreed to mediate the case and focused on informal discovery to prepare for the mediation. *Declaration of Ryan L Hicks*, Dkt. # 30-1 ("*Hicks Decl.*"), ¶ 3. On February 5, 2021, the parties participated in a full-day mediation session with Steve Pearl. *Id.* ¶ 4. Both parties submitted briefs summarizing their evidence, the state of the law, and potential individual and class-wide exposure. *Id.* Defendant maintained that no class could be certified and that it would also prevail on the merits against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

Plaintiff and any other putative class members. *Id.* Defendant brought fifteen supporting declarations from Retail Store Managers, constituting almost fifty percent of the proposed class. *Id*.

After arm's-length negotiations and with the help of Mr. Pearl, the parties agreed to a settlement ("Settlement Agreement."). *Id*. The settlement class (the "Class" or "Class Members") is defined as:

> all current and former employees of Defendant who worked as a Store Manager at any time in the State of California from April 6, 2016 through the date of the Court's order granting preliminary approval of this Settlement Agreement, or ninety (90) days after the execution of this agreement, whichever is earlier.

*Joint Stipulation of Class Action and PAGA Settlement Agreement*, Dkt. # 30-1, Ex. 1 ("*Settlement Agreement*"), ¶ 2.

Plaintiff now seeks preliminary approval of the proposed settlement. *See generally Mot*. Specifically, Plaintiff asks the Court to: (1) grant preliminary approval of the Settlement Agreement as to the proposed settlement Class; (2) conditionally certify the Class for settlement purposes; (3) approve the proposed schedule and procedure for completing the final approval process of the settlement as to the Class, including scheduling the final fairness hearing; (4) approve the Notice of Proposed Class Action Settlement ("Class Notice"); (5) appoint and approve Hoyer & Hicks as Class Counsel; (6) preliminarily approve Class Counsel's request for attorneys' fees and costs; (7) appoint the named Plaintiff as Class Representative; (8) appoint and approve Simpluris Group, Inc. ("Simpluris") as the Settlement Administrator; and (9) authorize the Settlement Administrator to mail the approved Class Notice to the Class. *See Notice of Motion*, Dkt. # 30, at ii.

II.  Class Certification for Settlement Purposes

When parties settle an action prior to class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the court must determine whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine "whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

(internal quotation marks omitted). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

    A.    <u>Legal Standard</u>

Parties seeking certification of a settlement-only class must still satisfy the Federal Rule of Civil Procedure 23 standards. *See id.* at 1019–24. Under Rule 23, a plaintiff must satisfy the four prerequisites of Rule 23(a) *and* demonstrate that the action is maintainable under Rule 23(b). *See Amchem*, 521 U.S. at 613–14. The four prerequisites of Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). And because Plaintiff seeks certification under Rule 23(b)(3), *see Mot.* 16:6–19, she must demonstrate that "questions of law or fact common to class members [1] predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

    B.    <u>Discussion</u>

The Court considers the four requirements of Rule 23(a) and then the two requirements of Rule 23(b)(3).

        *i.*    *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright-line test for numerosity—rather, it is based on a consideration of the specific facts of each case. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); *Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010). Courts generally presume the numerosity requirement is satisfied when there are at least forty members in the proposed class. *See Charlebois v. Angels Baseball, LP*, No. CV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) (citations omitted); *see also Jordan v. Cty. of L.A.*, 669 F. 2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

Here, the proposed class consists of only 31 members. *Hicks Decl.* ¶ 21. Rule 23(a)(1) permits a finding of numerosity even for a small member class if joinder of all members would be impracticable for reasons other than sheer size. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 675 (W.D. Wash. 2010) (numerosity requirement satisfied in class of 27 known class members); *Gaspar v. Linvatec Corp.*, 167

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

F.R.D. 51, 56 (N.D. Ill. 1996) (certifying class of 18 class members); *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557, 562 (N.D. Cal. 1999) (class of more than 25 class members); *Tietz v. Bowen*, 695 F. Supp. 441, 445 (N.D. Cal. 1987) (class of 27 class members).

Here, class members could face difficulty finding legal representation because of the uncertainties associated with trial and the potential for small individual recovery, and could lose incentive to bring their claims if forced to do so in isolation. Moreover, though the proposed class is modest in size, requiring the class members to litigate their claims separately would be inefficient and costly, and would likely result in duplicative and potentially conflicting proceedings. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). Numerosity is therefore satisfied.

        *ii.*     *Commonality*

To fulfill the commonality requirement, Plaintiff must establish questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal quotation marks omitted) (emphasis removed). For the purposes of Rule 23(a)(2), even a single common question satisfies the requirement. *See id*. at 359; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Here, Plaintiff identifies several questions common to the Class. Defendant classified all Class Members as exempt employees, and Plaintiff alleges they were required to (1) meet sales quotas equivalent to a full time sales associate and (2) spend more than half their time selling on the sales floor, yet (3) Defendant's policies regarding meal and rest periods did not apply to them because they were classified as exempt. *Mot*. 11:10–14; *Hicks Decl*. ¶ 22. By challenging these policies and Defendant's classification of Class Members as exempt employees, Plaintiff presents common questions that can be resolved on a class-wide basis. *See Dukes*, 564 U.S. at 350. Accordingly, the commonality requirement is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

    *iii.    Typicality*

    Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are "reasonably co-extensive with those of absent class members," though the claims need not necessarily be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see* Fed. R. Civ. P. 23(a)(3). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). The typicality and commonality requirements somewhat overlap. *See Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

    Here, Plaintiff alleges that she was employed as a Retail Store Manager and, like every other member of the class, she was classified as exempt and subjected to the same practices regarding sales, staffing, and management as the other Class Members. *Mot*. 12:7–13; *Hicks Decl*. ¶ 23. Thus, Plaintiff's claims are based on the same facts and legal theories applicable to Class Members. *Id*. Accordingly, the typicality requirement is satisfied.

    *iv.    Adequacy*

    The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

    Here, Plaintiff has no apparent conflicts of interest with other Class Members and her claims are in line with those of the Class. *Mot*. 12:22–28; *Hicks Decl*. ¶ 24. Plaintiff has prosecuted this case with the interests of the Class Members in mind, as demonstrated by her rejection of an offered individual severance package that would have resulted in the dismissal of this action. *Id*.

    Further, Plaintiff's counsel appear qualified and committed to representing the Class. Class Counsel have extensive experience handling wage and hour class actions and have previously been appointed as class counsel in other cases. *Hicks Decl*. ¶¶ 2, 24. Accordingly, the Court concludes that the adequacy requirement is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

    *v.*    *Predominance and Superiority*

Having concluded that the Class satisfies the Rule 23(a) factors, the Court now turns to Rule 23(b)(3). Rule 23(b)(3) provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole. Fed. R. Civ. P. 23(b)(3). The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

Plaintiff alleges that Defendant categorized all Regional Store Managers as exempt and then implemented uniform and systematic policies for Regional Store Managers that resulted in violations of various California laws. *Mot*. 13:15–20; *see generally FAC*. Thus, these claims could be resolved through common forms of proof, such as uniform policies, sales data, and sales requirements. *Mot*. 13:15–20. Claims based on this type of uniformly applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See, e.g.*, *Wright v. Linkus Enters.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, "despite the existence of minor factual differences between individual class members," where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065–68 (N.D. Cal. 2007) ("Plaintiffs have submitted evidence of [] uniform policies . . . such as training, recruiting and job descriptions. Accordingly, plaintiffs have made a strong showing that, as a general matter, common questions . . . predominate over individual variations."). As such, the Court concludes that common questions of law and fact similarly predominate here.

As for superiority, requiring 31 individuals to litigate their claims separately would be ineffective and costly, resulting in duplicative and potentially conflicting proceedings. *Mot*. 13:21–14:10; *Hicks Decl*. ¶ 26. In contrast, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding an expenditure of judicial resources and eliminating the possibility of conflicting decisions. *Mot*. 13:21–14:10; *Hicks Decl*. ¶ 26; *see Lerwill*, 582 F.2d at 512 ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). A class action would thus be the superior method for adjudicating this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

In short, the Court concludes that both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

    C.    Conclusion

Plaintiff has met the requirements for class certification under Rule 23. Therefore, the Court **CERTIFIES** the Class for settlement purposes only. The Court also **APPOINTS** Plaintiff as Class Representative and **APPOINTS** Hoyer & Hicks as Class Counsel.

III.    Preliminary Approval of the Proposed Class Settlement

The next step is to determine whether the settlement reached is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2).

    A.    Legal Standard

The approval of a class action settlement is a two-step process under Rule 23(e) in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-6352 MMM (CGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (internal quotation marks omitted). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *See Manual for Complex Litigation* (Fourth) § 13.14 (2004).

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.*, No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a final fairness hearing, and, if appropriate, a finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d

Case 5:20-cv-01085-PSG-SHK Document 31 Filed 04/12/21 Page 8 of 18 Page ID #:315

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027. In making this determination, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.

Where the parties negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *Dennis*, 697 F.3d at 864). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," and this "more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations omitted). Courts must especially scrutinize "subtle signs of collusion," such as a reversionary clause, a clear sailing agreement, or a disproportionately large attorneys' fees award. *Id.*

    B.    Overview of the Settlement Agreement

Under the terms of the Settlement Agreement, Defendant agrees to pay a gross sum of $475,000 (the "Maximum Settlement Amount"). *Settlement Agreement* ¶¶ I.18, III.43. This includes (1) up to 33 percent of the Maximum Settlement Amount, or $158,333.33, for Class Counsel's fees and up to $10,000 in costs, (2) an enhancement award for Plaintiff of $10,000, (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

PAGA Penalties of $10,000, and (4) $3,750 for administrative costs. *Id*. ¶ I.18. The remainder of the Maximum Settlement Amount after the deduction of Class Counsel's fees and expenses, the enhancement award, PAGA penalties, and administrative expenses ("Net Settlement Amount"), shall be paid to Class Members as their Individual Settlement Payments. *Id*. ¶¶ I.18–19. Individual Settlement Payments will be apportioned as 25 percent for wages and 75 percent for penalties and interest. *Id*. ¶ III.54(b)(ii).

The Net Settlement Amount is estimated to be $285,416.67. *Hicks Decl*. ¶ 12. Each Class Member's Individual Settlement Payment will be determined based on the total number of weeks that the Class Member worked as a Retail Store Manager during the Class Period as compared to the total weeks worked by all Class Members during the Class Period. *Settlement Agreement* ¶ III.54(b)(i). Defendant will provide data to the Settlement Administrator so that the Settlement Administrator can determine each Individual Settlement Payment amount. *Id*. ¶¶ III.53–54. Class Members will have an opportunity to contest the Settlement Administrator's calculations and the data Defendant provides. *Id*.

For any Class Member that does not timely opt out of the Settlement Agreement, the Settlement Administrator will mail Individual Settlement Payment checks. *Id*. ¶ III.54(b)(iii). The Settlement Administrator will mail and email a reminder notice to those Class Members who have not cashed their checks after 120 calendar days. *Id*. ¶ III.54(b)(iv). Any checks issued to Class Members shall remain valid for 180 calendar days after the date they are issued. *Id*. Checks that have not been cashed within 180 days will be tendered to the State Controller's Office Unclaimed Property Fund in the name of the Class Member who did not cash their settlement check. *Id*.

In return, Class Members who do not opt-out will release Defendant from

> all claims and causes of action alleged in the Action and the PAGA Letter, as well as all predicate claims based on the factual or legal theories alleged in the Action and the PAGA Letter, or reasonably could have been alleged based on the facts and legal theories alleged in the Action and the PAGA Letter, including all of the following legal claims: all claims for unpaid wages, including claims for minimum, overtime, and double-time wages, the alleged failure to pay for all time worked, the alleged failure to pay for all hours worked at correct rates, including overtime at the correct rates; all claims for meal period violations, including claims for late, short, interrupted and/or missed meal periods and/or the failure to pay premiums, and the alleged failure to properly record meal periods; all claims for rest break violations, including claims for late, short, interrupted, missed, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

> otherwise improperly controlled rest breaks and/or the failure to pay premiums; all claims for untimely paid wages; all claims for improper or inaccurate itemized wage statements, including alleged violations of Labor Code Section 226(a)(1)-(9) based on the facts and legal theories contained in the Action and the PAGA Letter, including the allegation that the wage statements lacked the total number of hours worked, and including claims for injuries suffered therefrom; all claims for the untimely payment of final wages and associated waiting time penalties under Labor Code Section 203 based on the allegations in the Action and the PAGA Letter; any and all claims regarding the alleged failure to maintain required records in violation of Labor Code §§ 226, 1174 and the applicable IWC Wage Order provisions; all claims for civil penalties under the Labor Code Private Attorneys General Act of 2004, Labor Code Section 2699 et seq. ("PAGA") premised on the allegations in the Action and the PAGA Letter, including under Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 11197, 1198, and all claims under the Business & Professions Code (including Section 17200 et seq.) premised on the allegations in the Action; any other claims or penalties under the wage and hour laws alleged in the Action and the PAGA Letter under California and federal law, including the California Labor Code and the applicable Wage Orders.

*Id*. ¶ I.29.

In addition, under the Settlement Agreement Plaintiff will generally release Defendant from all claims and her employment with Defendant will end. *Id*. ¶ III.46.

    C.    Analysis of the Settlement Agreement

        *i.*    *Fairness and Honest Negotiations*

In general, evidence that a settlement agreement is arrived at through genuine arm's-length bargaining with a private mediator supports a conclusion that the settlement is fair. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*, No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (granting preliminary approval of a class action settlement where the parties engaged in extensive negotiations); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) (declining to apply a presumption but considering the arm's-length nature of the negotiations as evidence of reasonableness).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

Here, the evidence supports the conclusion that the settlement is fair and honest. The parties engaged in formal and informal discovery prior to mediation. *Hicks Decl*. ¶ 3. Class Counsel conducted a thorough investigation into the merits of the claims by (1) exchanging hundreds of pages of documents including data regarding the entire class, (2) reviewing Plaintiff's employment records, employee handbooks and policies applicable to the class members, time records, store scheduling software and data, and pay records, and (3) interviewing a substantial number of Class Members. *Id*. ¶¶ 6–8, 27. Class Counsel also conducted a *Belaire- West* process.[1]

Moreover, the parties reached the Settlement Agreement after engaging in good faith, non-collusive mediation conducted by Mr. Pearl. *Id*. ¶ 27. The parties exchanged information regarding Defendant's realistic exposure to damages, the relative strengths and weaknesses of Plaintiff's claims, the risks and delays of further litigation, the current state of the law as it relates to Plaintiff's claims, and the difficulty Plaintiff may have in obtaining and maintaining class certification of each of her claims. *Id*.

The time and effort spent on settlement negotiations, as well as mediation with Mr. Pearl, are evidence that the settlement was not collusive and thus weigh in favor of preliminary approval of the Settlement Agreement. *See Hanlon*, 150 F.3d at 1029. Nothing indicates that the negotiations were dishonest or collusive in any way, and the discovery conducted in this case suggests that the parties were well informed and had sufficient information to assess the merits of their claims. *See Glass v. UBS Fin. Servs., Inc.*, No. CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). The Court is therefore satisfied that the Settlement is the product of fair and honest negotiations.

      *ii.*     Settlement Amount

To evaluate whether a settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

---

[1] In a *Belaire-West* process, employees are provided an opportunity to prevent their information from being shared with plaintiff's attorneys who are prosecuting a class action by giving employees the opportunity to opt out. *See generally Belaire-W. Landscape, Inc. v. Superior Ct.*, 149 Cal. App. 4th 554 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

Here, Plaintiff estimates Defendant's absolute maximum exposure to be $4,148,924.22 (including $1,503,200 in derivative PAGA penalties), with the total amount of damages further broken down as follows: overtime at $1,593,720.05; meal periods at $377,877.85; rest periods at $450,119.21; wage statement penalties at $114,762.50; and waiting time penalties at $82,244.61. *Hicks Decl*. ¶¶ 10–11.

The Maximum Settlement Amount, $475,000, is approximately eleven percent of Defendant's absolute exposure.[2] *Id*. ¶ 12. This award is "on the low end of the spectrum." *See Stovall-Gusman v. W.W. Granger, Inc.*, No. 13–cv–02540–HSG, 2015 WL 3776765, at *12 (N.D. Cal. June 17, 2015); *cf. Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that represented 27 percent of possible recovery); *Glass v. UBS Fin. Servs., Inc.*, CV 06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving an overtime wage settlement that represented 25 to 35 percent of the estimated damages).

However, the settlement does confer substantial benefits on Class Members who would face significant risk of no recovery and ongoing expenses if forced to proceed with the litigation. *Hicks Decl*. ¶ 28. The average net recovery per Class Member is approximately $9,207. Plaintiff states that the Maximum Settlement Amount considers the substantial risks inherent in any class action wage-and-hour case, as well as the specific defenses asserted by Defendant, most notably numerosity issues raised by a class size of just over 30. *Id*. Further, nearly half of all Class Members provided declarations to Defendant prior to the mediation that undermine certification. *Id*. Given that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citing *In re Mego*, 213 F.3d at 458), this factor favors preliminary approval.

Accordingly, although the Maximum Settlement Amount represents a low percentage of Defendant's absolute liability, the Court finds the settlement amount within the range of approval given the shortcomings in Plaintiff's case and the ongoing risks of litigation.

---

[2] The Net Settlement Amount, $285,416.67, is approximately eleven percent of the Maximum Settlement Amount minus the PAGA penalties and roughly seven percent of the total Maximum Settlement Amount. *Hicks Decl*. ¶ 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

      *iii.    Attorneys' Fees and Costs*

      When approving attorneys' fees in common fund cases, courts in the Ninth Circuit have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorneys' fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

      If employing the percentage-of-the-fund method, the "starting point" or "benchmark" award is 25 percent of the total settlement value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A court may adjust the award from the benchmark but must explain its reasons for so doing. *See Powers*, 229 F.3d at 1255–57.

      Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050. To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

      In this case, Class Counsel requests an award of attorneys' fees not to exceed one-third of the Maximum Settlement Amount, or $158,333.33, and up to $10,000 in costs. *Hicks Decl.* ¶ 61. Class Counsel argues the fee is reasonable given the results achieved, the effort expended in litigating the claims, the difficulties attendant to litigating the case, and the contingent nature of the case. *Id*. Further, Class Counsel states that the award is reasonable given the lodestar amount of $105,000, which means the fee award will result in a multiplier of 1.52. *Id*. ¶ 62.

      Class Counsel has not submitted hourly rates and hours expended in the case to determine whether the lodestar value is reasonable. As such, with its motion for final approval, the Court **ORDERS** Class Counsel to provide hourly rate and hours spent in the case, as well as an explanation of whether the multiplier is appropriate in comparison with similar cases. Class Counsel is further instructed to justify its upward departure from the benchmark under the *Vizcaino* factors. *See Vizcaino*, 290 F.3d at 1048–50 (examining (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

Finally, Class Counsel must submit a detailed summary of its costs and expenses for the Court's consideration.

        *iv.*    *Enhancement Awards*

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. When considering requests for incentive awards, courts consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Further, courts also typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975.

Plaintiff seeks an enhancement award of $10,000 in addition to her individual settlement payment. *Settlement Agreement* ¶ III.54(b)(i). This amount is equal to approximately two percent of the total settlement. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693 PSG (GJSx), 2017 WL 4685536, at *11 (C.D. Cal. May 8, 2017) (approving $25,000 incentive award, in part, because the award reflected 0.2 percent of the total settlement). However, Plaintiff's requested enhancement award is only 1.09 times the average Class Member's award of $9,207. *Mot*. 20:21–22; *see Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ("To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards."); *cf Dawson v. Hitco Carbon Composites, Inc.*, No. CV1607337PSGFFMX, 2019 WL 7842550, at *10 (C.D. Cal. Nov. 25, 2019) (finding an enhancement award of 5 times the average award reasonable, but reducing an enhancement award of 12 times the average award). Moreover, Plaintiff spent dozens of hours performing work related to the case, her employment will end as a condition of settlement, and she executed a general release of all claims against Defendant. *Mot*. 20:23–21:5. These factors indicate the enhancement award is reasonable.

Ultimately, the Court will determine the reasonableness of the requested enhancement awards when ruling on Plaintiff's motion for final approval. Before the final approval hearing, the Court **ORDERS** Plaintiff to submit a memorandum further justifying her award as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

percentage of the total settlement. Plaintiff should also submit a declaration supporting the enhancement award, including a detailed description of Plaintiff's efforts in pursuit of this case.

    *v.*    *Administration Costs*

The Settlement Agreement provides that the parties will pay Simpluris $3,750 to administer the Settlement. *Hicks Decl.* ¶ 19, Ex. 2. The request is reasonable considering the estimated size of the Class, 31 individuals. *See Ching v. Siemens Indus.*, No. 11–cv–04838–MEJ, 2014 WL 2926210, at *2 (N.D. Cal. June 27, 2014) (approving an estimated $15,000 claims administrator fee for sixty-eight claims); *Ozga v. U.S. Remodelers, Inc.*, No. C 09–05112 JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting $10,000 to the claims administrator for 156 claims).

    *vi.*    *PAGA Penalties*

The parties have agreed to a PAGA penalty of $10,000. *Hicks Decl.* ¶ 15. Seventy-five percent ($7,500) will go to the Labor and Workforce Development Agency ("LWDA") and 25 percent ($2,500) will be distributed *pro rata* to all PAGA Releasees, based on the number of PAGA Pay Periods worked, as a fraction of the total PAGA Pay Periods worked of all PAGA Releasees. *Id*. n. 2; Cal. Lab. Code § 2699(i) (providing that 75 percent of civil penalties recovered by aggrieved employees should be distributed to the LWDA). This PAGA allocation represents approximately two percent of the $475,000 Gross Settlement Amount, which is in the range generally approved by courts. *See, e.g.*, *In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving settlement of wage and hour class action claims and PAGA claims under which no money was allocated to the PAGA claims). Accordingly, the Court finds the settlement of the claims for penalties under PAGA is reasonable.

    *vii.*    *Remaining Funds*

The Settlement Agreement provides that checks that remain uncashed after 180 days will be tendered to the State Controller's Office Unclaimed Property Fund in the name of the Class Member who did not cash their settlement check. *Settlement Agreement* ¶ III.54(b)(iv). Courts in this district have approved class action settlements that deal with remaining funds in this manner. *See, e.g.*, *Sequeira Ruiz v. JCP Logistics, Inc.*, No. SACV131908JLSANX, 2016 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

6156211, at *1 (C.D. Cal. Mar. 10, 2016); *Krumbine v. Schneider Nat'l Carriers, Inc.*, No. 10CV4565GHKJEMX, 2013 WL 12209908, at *1 (C.D. Cal. Aug. 6, 2013); *Rooker v. Gen. Mills Operations, LLC*, No. CV 17-467 PA (PLAX), 2018 WL 4962089, at *1 (C.D. Cal. Mar. 26, 2018). Accordingly, the Court is satisfied with the parties' proposal for dealing with any remaining funds.

    D.    Notice to Class Members

Before the final approval hearing, the Court requires adequate notice of the settlement be given to all class members. Federal Rule of Civil Procedure 23 provides:

> For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Plaintiff has provided a proposed Class Notice. *See generally Notice of Proposed Class Action Settlement*, Dkt. # 30-1, Ex. 1 ("*Notice*"). It sets forth in clear language the meaning and nature of (1) the Class definition and the class action, (2) the terms and provisions of the Settlement Agreement, (3) the specific monetary awards that the Settlement Agreement will provide each Class Member, (4) the process to dispute the Settlement Administrator's workweek calculation, (5) how to opt out of the Settlement Agreement, (6) how to object to the Settlement Agreement, (7) information concerning the release, (8) Class Counsel's application for attorneys' fees and the proposed enhancement award for Plaintiff, and (9) the Court's procedure for final approval of the Settlement Agreement. *Id*.

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Class Notice. Within ten calendar days after the entry of the Preliminary Approval Order,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

Defendant shall provide to Simpluris for each Class Member the last-known name, Social Security number, last-known address, the number of weeks worked during the Class Period, and email address if available. *Settlement Agreement* ¶¶ I.5, III.54(a). Simpluris will then mail the Class Notice to each Class Member. *Id.* If a Class Notice is returned as undeliverable, Simpluris will attempt to obtain a valid mailing address by use of a skip trace database. *Id*. The Class Notice requires any class member who wishes to opt out from the Settlement Agreement, object to the Settlement Agreement, or dispute the number of workweeks credited to him or her, must do so in writing to the Settlement Administrator postmarked no later than forty-five calendar days from the date of the mailing. *Notice* at 4.

Having reviewed the Class Notice, the Court finds it satisfactory.

IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for preliminary approval of the class action settlement. The Court **PRELIMINARILY APPROVES** the Settlement Agreement, **APPOINTS** Plaintiff as Class Representative and **APPOINTS** Hicks & Hoyer as class counsel. The Court also **APPOINTS** Simpluris as the Settlement Administrator and **APPROVES** the proposed Class Notice. The final approval hearing is set for **September 10, 2021**.

At least thirty days before the final approval hearing and in addition to the motion for final approval of the class action settlement, the Court **ORDERS** Plaintiff to file:

- A memorandum justifying the departure from the 25 percent benchmark for attorneys' fees under the *Vizcaino* factors. *See Vizcaino*, 290 F.3d at 1048–50 (examining (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases). Class Counsel is further instructed to provide the requested hourly rate and hours expended in this case so that the Court can calculate the lodestar value and use it to cross-check the reasonableness of the fees and costs award. In its motion, Class Counsel should explain why the proposed multiplier is appropriate in this case. Finally, Class Counsel must submit a detailed summary of its costs and expenses for the Court's consideration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-1085 PSG (SHKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | Michelle Nourian Martinez v. Helzberg's Diamond Shops et al | | |

- A memorandum justifying Plaintiff's enhancement award as it compares to the Maximum Settlement Amount. Plaintiff should also submit a declaration supporting the enhancement award, including a detailed description of Plaintiff's efforts in pursuit of this case.

**IT IS SO ORDERED.**